UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALBERTO GONZALEZ,

                Petitioner,

        -v-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------x

06 Civ. 14431 (GEL)
02 Cr. 877 (GEL)

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

      On June 18, 2004, this Court sentenced defendant Alberto Gonzalez to 235 months of imprisonment, to be served concurrently with a state sentence of seven years to life he was already serving, following his plea of guilty to conspiring to import and distribute large quantities of heroin and cocaine. Gonzalez now petitions to vacate the sentence, arguing that his plea was not entered knowingly and intelligently, that he was denied effective assistance of counsel, that he was unlawfully sentenced according to the then-mandatory sentencing guidelines, and that his fine was excessive. The motion is without merit and will be denied.

I

      Gonzalez claims that his plea was invalid because he was suffering from a brain tumor that interfered with his capacity to enter a knowing and intelligent plea. The record establishes that Gonzalez was fully competent to enter a plea, and did so voluntarily and with a full understanding of his rights and of the consequences of his plea.

      The medical records of the Bureau of Prisons do not contain any indication that Gonzalez suffers from a brain tumor (Resp. Letter at 6, n.2), and Gonzalez offers no evidence other than

his own assertion that he suffers, or has ever suffered, from such a malady. It is unnecessary to resolve any dispute about the details of Gonzalez's medical condition at the time of his plea, since any tumor Gonzalez may have had had no effect on his ability to enter a knowing and voluntary, and intelligent plea.

At the time of his plea Gonzales stated that he had a tumor "under my brain outside my brains." (5/2/03 Tr. 4.) He stated, however, that this condition did not affect his "ability to understand or to make decisions," only his "vision and memory." (Id.) Defense counsel stated that he had no doubt of defendant's competence to plead, and the Court found it "very clear . . . from his demeanor and his answer to my questions that Mr. Gonzalez is thoughtful, intelligent and [] aware of what is going on." (Id. 5-6.)

Before accepting Gonzalez's plea, the Court fully explained to the defendant his constitutional rights (which had already been presented in a written document that defendant read and signed) (id. 7-10), the charges in the indictment, the elements of those charges, and the sentencing consequences of each and all (id. 10-16); and the sentencing terms of the plea agreement Gonzalez had entered with the Government (id. 16-18). Gonzalez affirmatively stated that he understood each item, and does not now contend that he did not.

The parties had signed a plea agreement which expressly stipulated that the applicable guidelines-sentencing range was 188 to 235 months of imprisonment, that neither a downward nor an upward departure from that range was warranted, and that defendant waived any right to appeal a sentence within or below that range. (Plea Agreement at 4-5.) Gonzalez affirmed under oath that he had read this agreement and discussed it with his attorney before signing it, and that he believed he understood its terms. (5/2/03 Tr. 16-17.) Nevertheless, the Court carefully

explained the sentencing terms of the agreement, and Gonzalez specifically affirmed his understanding of each key sentencing provision. (Id. 17-18.) The Court explained, moreover, that while the agreement limited the rights of the Government and the defendant, it did not bind the Court, which was "required to make [its] own independent calculation under the sentencing guidelines." (Id.) Having previously advised defendant that the maximum sentence was life imprisonment (id. 12), the Court emphasized that "no one . . . can be sure what your sentence will be" until the sentencing date, when the Court had "decided, first, what is the correct calculation of the sentencing guidelines and, second, whether there is any basis for departing up or down from that range." (Id. 15-16.) The Court warned defendant, and he acknowledged that he understood, "even if your sentence is different from what your attorney or anyone else has predicted, [and] even if it is different from what you expect, once you [have] pleaded guilty, you will not be allowed to withdraw your plea." (Id. 16.)

In addition to explaining the terms of the written plea agreement, the Court specifically asked Gonzalez whether the written agreement constituted "the entire agreement between you and the government concerning your plea and sentence," to which Gonzalez unhesitatingly answered, "yes." To be certain that the response was not simply acquiescence in a leading question, the Court rephrased the question in another way, asking, "is there any agreement between you and the government that has been left out of the writing or any side deal or promise where somebody says here is the real deal but we didn't put it in writing." (Id. 17.) Gonzalez equally firmly answered, "no," denying that there was "anything like that." (Id.)

Gonzalez now claims that there was indeed, "[some]thing like that." He claims that "he was promised a sentence of 14 years maximum before any reductions and [due] to temporary

loss of memory resulting from the brain tumor, [he] was unable to remember this promise at the time of the sentencing when being questioned by the Court." (Traverse at 5.)

Gonzalez's fanciful claims are refuted not only by his own sworn testimony at the allocution, but also by the affidavits of his attorneys, which were solicited by the Court in connection with Gonzalez's claims of ineffective assistance of counsel. See Cox v. Donnelly, 387 F.3d 193 (2d Cir. 2004) (holding that habeas court must give trial counsel an opportunity to explain allegedly deficient performance, by live testimony, affidavits, or otherwise, before granting habeas for ineffective assistance).

Sanford N. Talkin, Esq., Gonzalez's original attorney, avers that the plea negotiations were primarily addressed to Gonzalez's unsuccessful efforts to cooperate with the Government. (Talkin. Aff. ¶¶ 4-8.) He refers to no "original deal of 14 [ ] years," as claimed by Gonzalez. (Pet. Mem. at 14.) Instead, he simply relates that, after the failure of Gonzalez's efforts to cooperate, he "negotiated a plea agreement with the government" that called for "a sentencing range of 188-235 months." (Talkin Aff. ¶ 9.) Talkin further states that, despite being advised by Gonzalez of his claim to have a brain tumor, he "never viewed any documentation" of such a problem and "never observed any health problem" on Gonzalez's part "that [a]ffected his ability to comprehend his case, options, or circumstances." (Id. ¶ 13.)

Talkin's successor, Barry E. Schulman, Esq., met with Gonzalez "several times" after his plea in connection with Gonzalez's desire to retain Schulman to represent him at sentencing (Schulman Aff. ¶ 4):

> During these meetings Mr. Gonzalez and I discussed at length the
> nature of the case and the plea agreement which he had signed. At
> all times it appeared to counsel that Mr. Gonzalez comprehended
> the exposure that the plea agreement contemplated. At no time did

>Mr. Gonzalez ever refer to a promise of fourteen years[,] and nothing in the plea agreement seemed to indicate that that would be the limit of his exposure.

(Id. ¶ 5.)

Thus, there is no basis for Gonzalez's claim that he was ever offered, let alone promised, a plea agreement with a maximum of 14 years. Talkin's affidavit makes clear that Gonzalez was focused from the start on obtaining a favorable plea. (Talkin Aff. ¶¶ 4, 5, 10.) This was entirely rational, as "[t]he government's evidence included, among other things, numerous intercepted telephone conversations, telephone records and other recordings of conversations with co-conspirators." (Id. ¶ 5.) However, the plea negotiations focused on his effort to obtain leniency by cooperating, and when that failed, he accepted the Government's offer of a plea agreement stipulating to a sentencing range of 188-235 months. Even if Gonzalez were correct that he had at some point been made such an offer, moreover, it could not have affected his decision to plead guilty, since Gonzalez's own claim at present is that he had forgotten the alleged promise before pleading guilty, in an allocution in which he was left with no ambiguity about the nature of the agreement governing his plea and sentence.

Nothing in the petition casts any doubt on the Court's finding, at the conclusion of the allocution, that Gonzalez was "competent to enter a guilty plea" and understood the consequences of his plea. (5/2/03 Tr. 22.) Both of his attorneys confirm that they never "detect[ed] impairment of Alberto Gonzalez's mental functioning, his ability to understand, his ability to make his wishes known and understood or any other evidence that his will was being interfered with by any medical or psychological matter." (Schulman Aff. at 13; see also Talkin Aff. ¶ 13.)

In short, Gonzalez chose to plead guilty knowingly and voluntarily, and with a correct understanding of his rights, the charges, the consequences of his plea, and the terms of the plea agreement.  He has provided no basis for undoing that choice.

II

Nor is there any merit to Gonzalez's claim of ineffective assistance of counsel.

To prove ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by his counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668, 686-88 (1984).  When applying the Strickland analysis, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  "The court's central concern is not with 'grad[ing] counsel's performance,' . . . but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"  United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland).

Gonzalez first attacks his first attorney, Talkin, for having failed to investigate the case fully (Pet. Mem. 15), and for failing to insist on the "original deal of 14 [ ] years" (id. 14).  What has been said above largely disposes of both claims.  There was no deal of 14 years, and there was little to investigate: as counsel points out, Gonzalez essentially committed the charged crimes on tape, and from the very start he admitted his guilt to counsel and instructed counsel to pursue a plea and cooperation opportunities.  (Talkin Aff. ¶¶ 4-5.)  Counsel's decision, under the circumstances, to defer further investigation of the background of cooperators (id. ¶ 5), or of other matters that might come up if a trial proved necessary, was a reasonable one.  Gonzalez

offers no hint of what investigation counsel should have pursued or of what evidence could have been uncovered, and thus fails to establish either that counsel's performance fell below professional standards or that he was prejudiced in any way.

Gonzalez next complains that his appellate attorney, Schulman, failed to argue effectively against the Second Circuit's finding that he had waived his right to appeal. (Pet. Mem. 16-18.) The argument is frivolous. The Second Circuit has repeatedly upheld the validity of waivers of appeal entered pre-Booker, even in the face of the new sentencing regime instituted by that case. See, e.g., United States v. Morgan, 406 F.3d 135 (2d Cir. 2005). There was thus no possibility that the waiver could be invalidated on any basis suggested by Gonzalez in his petition.

### III

Finally, Gonzalez raises a number of objections to his sentence. All of the arguments, as the Second Circuit held in summarily affirming his conviction, were waived by Gonzalez's plea agreement. In any event, they are without merit.

Gonzalez's argument that the Court erred by applying the sentencing guidelines as a mandatory system was made to the Second Circuit on direct appeal and rejected on the basis of the waiver. It is thus not open to Gonzalez to raise collaterally.

In any event, even a glance at the sentencing transcript makes clear that the Court did not impose sentence in a rote or mechanical fashion. The Court heard extensive argument from defense counsel about factors calling for leniency, and imposed a sentence that in fact departed from the guidelines by being concurrent with, rather than consecutive to, his state sentence as was required by the guidelines, because Gonzalez's crimes were committed during his

incarceration on state charges.  See U.S.S.G. § 5G1.3(a).

At sentencing, the Court made clear that the sentence imposed was carefully constructed to accomplish the necessary goal of incapacitation.  Recognizing both the seriousness of the crimes committed and the egregiousness of defendant's conduct in running a large-scale heroin and cocaine importation operation from inside state prison, the Court attempted to construct a sentence that would guarantee lengthy incarceration.  (6/18/04 Tr. 18-24.)  Noting the difficulty of coordinating a non-parolable federal sentence with a parolable state sentence, the Court opted for a sentence at the top of the guidelines range, but made the sentence run concurrently with the state sentence of seven years to life.  The Court thus guaranteed that Gonzalez would be in prison for nearly 20 years, and left the decision of whether he should be paroled thereafter from his maximum state sentence of life imprisonment to the state authorities.

There is manifestly no way that the sentence would have been different under the Booker regime.  Gonzalez cites no factor not considered by the Court that would suggest a lower sentence.  As his sentence was at the top of the guidelines range, it is clear that the sentence was not simply driven by a mandatory regime, but rather was selected by the Court as necessary, in light of all the facts and circumstances, to accomplish the purposes of sentencing.

Gonzalez's claim that the indictment was constructively amended because his sentence was calculated based on specific drug quantities not included in the indictment fares no better.  District courts may calculate guidelines ranges and impose sentences based on facts not alleged in the indictment, so long as those facts do not increase the penalty beyond the statutory maximum or trigger a mandatory minimum attached to such a statutory maximum.  United States v. Sheikh, 433 F.3d 905 (2d Cir. 2006).  Gonzalez's long and incoherent "jurisdictional" attack

on the indictment (Traverse at 2-5), is unavailing in the face of this established precedent.

Finally, Gonzalez attacks his fine of $17,500. The fine was set at the bottom of the recommended guidelines range. Although Gonzalez argues that he has no assets with which to pay the fine (Traverse at 9), the Court specifically found that "the activity charged in this indictment generated large amounts of income." (6/18/04 Tr. 25.) Since defendant was incarcerated during the entire course of that activity, he had little opportunity to spend any of his share of the proceeds. It is eminently reasonable to infer that at least some of this income is "being held for defendant outside of prison." (Id.) The Court thus was not obliged to accept the Probation Department's recommendation of a departure to $5000, or defendant's argument (not raised at the time of sentencing) that a fine should be waived.

## CONCLUSION

Accordingly, Gonzalez's petition under 28 U.S.C. § 2255 is denied. As he has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will be denied. However, any appeal may be pursued in forma pauperis.

SO ORDERED.

Dated: New York, New York
June 27, 2007

_____
GERARD E. LYNCH
United States District Judge